**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: FLORIDA HOTEL PROPERTIES
LIMITED PARTNERSHIP PLAN TRUST
AGREEMENT,
Debtor.

EDWARD P. BOWERS, Trustee,
Plaintiff-Appellant,

                                             No. 97-2507

v.

KUSE ENTERPRISES, INCORPORATED,
Defendant-Appellee,

and

J. R. KUSE,
Defendant.

In Re: FLORIDA HOTEL PROPERTIES
LIMITED PARTNERSHIP PLAN TRUST
AGREEMENT,
Debtor.

EDWARD P. BOWERS, Trustee,
Plaintiff-Appellee,

                                             No. 97-2583

v.

KUSE ENTERPRISES, INCORPORATED,
Defendant-Appellant,

and

J. R. KUSE,
Defendant.

Appeals from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CA-93-410-3-MU, BK-91-31425-C, AP-93-3080)

Argued: May 7, 1998

Decided: September 22, 1998

Before ERVIN and HAMILTON, Circuit Judges, and
BLAKE, United States District Judge for the
District of Maryland, sitting by designation.

_____

Affirmed in part and reversed in part by unpublished opinion. Judge
Ervin wrote the opinion, in which Judge Hamilton and Judge Blake
joined.

_____

**COUNSEL**

**ARGUED:** Joseph Williamson Grier, III, GRIER, BELTHOFF &
FURR, P.A., Charlotte, North Carolina, for Appellant. Brad Alexan-
der Baldwin, JONES, DAY, REAVIS & POGUE, Atlanta, Georgia,
for Appellee. **ON BRIEF:** J. Cameron Furr, K. Lane Klotzberger,
GRIER, BELTHOFF & FURR, P.A., Charlotte, North Carolina, for
Appellant. R. Matthew Martin, JONES, DAY, REAVIS & POGUE,
Atlanta, Georgia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

ERVIN, Circuit Judge:

The parties to a bankruptcy proceeding cross-appeal the district court's decisions below. Kuse Enterprises, Inc. ("Kuse") appeals the district court's affirmance of the bankruptcy court's finding that it was the initial transferee of an unapproved post-petition transfer made by means of a cashier's check, and the court's subsequent entry of summary judgment in favor of the Trustee for the bankruptcy debtor Florida Hotel Properties Limited Partnership ("FHP"). The Trustee appeals the district court's finding, reversing the bankruptcy court, that Kuse is entitled to a set-off for the transfer in question because of a settlement agreement between the Trustee and the bank that issued the cashier's check. For the reasons stated herein, we agree that Kuse was the initial transferee and affirm the grant of summary judgment, but reverse the district court and reinstate the bankruptcy court's finding that Kuse was not entitled to a set-off for settlement funds received by the Trustee.

I.

FHP owned ten Days Inn Hotels in Florida. Commercial Management Corporation ("CMC") managed FHP and controlled its operating bank accounts. At all times relevant to this case, Sam McMahon, III, was the president and one-third owner of CMC.

On July 2, 1991, FHP filed a voluntary petition under Chapter 11 of the Bankruptcy Code and operated as a debtor-in-possession until a special examiner was appointed on December 13, 1991. On October 4, 1991, while FHP was still debtor-in-possession, McMahon caused CMC to write two checks, each from a separate FHP operating account, in the respective amounts of $295,000 and $300,000, to Southern National Bank ("the Bank"). McMahon then instructed the Bank to issue two cashier's checks to J.R. Kuse in like amounts. Each cashier's check showed FHP as the remitter.

That same day, McMahon's administrative assistant delivered the checks to Scott Starnes, an employee of Starnes Aviation. Starnes in

turn delivered the checks to Michael Kuse, an employee of Kuse Enterprises and son of J.R. Kuse. Michael Kuse delivered to Starnes a bill of sale dated October 3, 1991, transferring an Augusta 109A helicopter from Kuse Enterprises to Starnes Aviation. J.R. Kuse deposited the two checks into Kuse Enterprises' operating account.

In another bill of sale dated October 3, 1991, Starnes Aviation transferred title to the helicopter to Southland Realty Associates, Inc., a corporation wholly owned by McMahon. While Southland Realty owned the helicopter, it was used by Team III Racing. Team III Racing owned and operated a NASCAR racing team, and was also wholly owned by McMahon. On October 31, 1991, Southland Realty transferred the helicopter to Leasing Consultants, Inc., which in turn leased the helicopter to Team III Racing. The helicopter was at no time titled in the name of FHP or used by or for the benefit of FHP. The $595,000 payment by FHP for the helicopter was not approved by the bankruptcy court.

On February 22, 1993, FHP's trustee in bankruptcy, Edward P. Bowers ("the Trustee"), brought an adversary proceeding against Kuse Enterprises and J.R. Kuse under §§ 549 and 550 of the Bankruptcy Code ("the Kuse proceedings"), seeking to recover the $595,000 unauthorized post-petition transfer. See 11 U.S.C. § 549 (giving trustee authority to avoid unauthorized post-petition transfers of property out of estate); id. § 550 (authorizing trustee to recover property transferred to extent transfer is avoided under § 549). Both parties moved for summary judgment. The bankruptcy court held a hearing, and on December 14, 1993 entered findings of fact and conclusions of law which determined that the money Kuse had received was an avoidable transfer under § 549 and that Kuse was liable for the transfer under § 550(a)(1) as the "initial transferee." The bankruptcy court further concluded that J.R. Kuse was a "mere conduit" for the funds from whom the Trustee could not recover. Kuse appealed.

On July 2, 1993, while the Kuse proceedings were underway, the Trustee also filed a complaint against the Bank on behalf of FHP, alleging 18 causes of action and seeking to recover numerous transfers totaling over $14 million. Two of these causes of action alleged that the Bank was the initial transferee of the $595,000 Kuse transfer. On August 12, 1993, the Trustee filed a similar suit against the Bank

4

on behalf of another debtor, Southeast Hotel Properties Limited Partnership ("SEHP"). In May 1995, after the bankruptcy court had granted summary judgment for the Trustee in the Kuse proceedings, the Bank and the Trustee agreed to settle all claims between them with respect to both FHP and SEHP for a lump sum of $1.5 million. The settlement agreement expressly stated that it settled "any and all . . . claims, actions or causes of action . . . whether in law or in equity, whether known or unknown, whether in tort or contract, of any kind or character, which [the Trustee] now has . . ., or could have asserted, or may hereafter accrue . . . ." The agreement itself did not provide for any allocation of the settlement proceeds among the various claims listed in the Trustee's 18-count suit against the Bank; however, when the bankruptcy court approved the settlement agreement on June 20, 1995, it allocated 60.85% of the $1.5 million settlement to FHP's estate and 39.15% to SEHP's estate.

While this settlement agreement was being finalized, the Kuse proceedings remained on appeal in the district court. On November 14, 1995, the district court remanded the Kuse proceedings to the bankruptcy court for further consideration of certain affirmative defenses. On remand, the bankruptcy court conducted a hearing and concluded that none of those defenses barred summary judgment for the Trustee, and Kuse, as the initial transferee, therefore remained liable for the avoided transfer. At this hearing, however, Kuse raised the question of whether it was entitled to a credit or set-off for funds received by the Trustee from its settlement with the Bank under § 550(d) of the Bankruptcy Code, which prevents double recovery. See § 550(d) (stating that trustee is entitled to only single satisfaction of claims under § 550(a)). The bankruptcy court concluded that Kuse was not entitled to any set-off.

Kuse appealed to the district court. The district court affirmed the bankruptcy court's grant of summary judgment for the Trustee, finding that Kuse was the initial transferee. However, the district court reversed the bankruptcy court on the set-off issue, finding that Kuse was entitled to a reduction in judgment based on settlement proceeds the Trustee received from the Bank, and thus reduced Kuse's liability to zero. Both parties now appeal the district court's rulings.

5

II.

Our review of the district court's decision is plenary; we apply the same standard of review as the district court applied to the bankruptcy court's decision. Findings of fact are reviewed for clear error and conclusions of law are reviewed de novo. Bowers v. Atlanta Motor Speedway, Inc. (In re Southeast Hotel Properties), 99 F.3d 151, 154 (4th Cir. 1996).

III.

The first issue we must decide is whether the district court and bankruptcy court correctly determined that Kuse was the "initial transferee" of the avoidable transfer under § 550 of the Bankruptcy Code. According to Kuse, it cannot be considered the initial transferee because the Bank that issued the cashier's checks at FHP's directions is the initial transferee. We disagree and find that Kuse was indeed the initial transferee. We therefore affirm the lower courts' grants of summary judgment for the Trustee.

Section 549 of the Bankruptcy Code entitles a trustee in bankruptcy to avoid unauthorized post-petition transfers. See 11 U.S.C. § 549. The persons from whom the trustee may recover property where a transfer has been avoided under § 549 are set out in § 550 of the Code, which states that:

> [T]he trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property, from--
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made.

11 U.S.C. § 550(a). According to § 550, the trustee's power to recover from an "initial transferee" is absolute. See Bowers v. Atlanta Motor Speedway, Inc. (In re Southeast Hotel Properties), 99 F.3d 151, 154 (4th Cir. 1996) (hereinafter "Bowers I") (noting § 550 protects a good faith mediate or immediate transferee who has taken for value without knowledge of the avoidability of the transfer, but that

6

the statute does not extend this same protection to either the "initial transferee" or "the entity for whose benefit such transfer was made").

The Bankruptcy Code does not define "initial transferee." However, in Bowers I, a case related to this one and involving similar facts, this court explicitly adopted the "dominion and control" test set out in Bonded Financial Services, Inc. v. European American Bank, 838 F.2d 890 (7th Cir. 1988), to determine whether an entity is an "initial transferee" under § 550(a). Bowers I, 99 F.3d at 156. The dominion and control test, as we apply it, requires that in order to be an initial transferee, a party must exercise legal dominion and control over the property -- physical possession of the property is not sufficient. Thus, a party who is acting as a "mere conduit" for the transfer of the property and who has no legal right to use the funds for its own purposes is not the "initial transferee" for purposes of § 550(a). See, e.g., Bowers I, 99 F.3d at 155 ("[T]he initial transferee of property is not always the initial recipient of the property, and . . . a party cannot be an initial transferee if he is a `mere conduit' for the party who had a direct business relationship with the debtor." (citations omitted)); Rupp v. Markgraf, 95 F.3d 936, 941 (10th Cir. 1996) (stating that dominion and control test requires that initial transferee have control over the funds and "the right to put those funds to one's own purpose").

Applying the dominion and control test to the facts here, we conclude that Kuse was the initial transferee of the $595,000 transferred from FHP's operating accounts. Although the funds were put in the Bank's possession, they were placed there solely to enable the Bank to issue the cashier's checks to Kuse. The Bank had no right to use the funds for other purposes and therefore lacked the authority to exercise legal dominion and control over the funds. Accordingly, under the dominion and control test as adopted by this court in Bowers I, the Bank was not the "initial transferee" of the funds under § 550 of the Bankruptcy Code. Accord Rupp v. Markgraf, 95 F.3d 936 (10th Cir. 1996) (applying dominion and control test and finding bank that issued cashier's check not initial transferee because bank acted only as financial intermediary).

Kuse makes two separate arguments why it cannot be the initial transferee of the funds in question. First, it contends that the cashier's

7

checks constituted funds of the Bank, rather than of the estate. In reaching this conclusion, Kuse relies heavily on the bankruptcy court's decision in Ellis v. State Bank of Towner (In re Archie Campbell, Inc.), 45 B.R. 416 (Bankr. D.N.D. 1984), which held that a cashier's check is a transfer of funds of the issuing bank rather than funds of the debtor. Id. at 419. The reasoning of the Archie Campbell bankruptcy court was rejected by the district court that heard the case on appeal, however, with that court holding that payment by cashier's check did not preclude a finding that there had been a transfer of the debtor's property. Ellis v. Dakota Bank & Trust (In re Archie Campbell, Inc.), 54 B.R. 116, 118 (D.N.D. 1985) (remanding case to bankruptcy court to determine whether under facts of the case cashier's check in question involved a transfer of the bank's or debtor's property).

Here, the checks written on FHP's account depleted the bankruptcy estate by the not inconsiderable sum of $595,000. Kuse, in turn, received $595,000 -- upon receipt of which it transferred the Augusta 109A helicopter to a third party. We therefore find that the payment by cashier's check was a transfer, albeit indirect, of the debtor's funds rather than of the Bank's funds. In reaching this conclusion, we join numerous courts, including our own decision in Bowers I, that have treated payment made by cashier's checks as transfers of a debtor's property. See, e.g., 99 F.3d 151 (assuming without discussion that payment by cashier's check was transfer of debtor's property); Schafer v. Las Vegas Hilton Corp. (In re Video Depot, Ltd.), 127 F.3d 1195 (9th Cir. 1997) (same); IRS v. Nordic Village, Inc. (In re Nordic Village, Inc.), 915 F.2d 1049 (6th Cir. 1990) (same).

Kuse's second argument is that the Bank acted in bad faith in its handling of the debtor's funds, and is therefore not eligible for the "mere conduit" exception to the strict application of § 550(a). Kuse bases this argument on our decision in Huffman v. Commerce Security Corp. (In re Harbour), 845 F.2d 1254 (4th Cir. 1998), in which we held that when an "initial recipient is asking the court to ignore the literal meaning of section 550(a)(1) on essentially equitable grounds, this party must have acted in `good faith' with respect to the relevant transaction in order to be spared the effects of this code provision." Id. at 1258. This case, however, is readily distinguishable from Harbour on its facts.

8

In Harbour, the debtor made a number of avoidable transfers to a friend of his. These transfers were made through a third party, who happened to be a close family friend of the debtor and the mother of the recipient of the funds. Claiming to have been entirely ignorant of the reasons behind the financial maneuverings of the debtor and her son, this third party argued that she should be considered a "mere conduit" for the funds and not the initial transferee. We rejected her argument, finding that she was at best a "willing dupe" in the transaction and her failure to act in good faith prohibited us from finding her a "mere conduit" in the transfer. However, as we noted in our Harbour opinion, "the likelihood of bad faith on [a] defendant's part is lessened where the defendant is a commercial enterprise handling transactions in a routine manner." Id. We find this case distinguishable on those grounds. The Bank here, in contrast to the defendant in Harbour, is a commercial entity that is in the business of issuing cashier's checks in the course of its normal commercial transactions, and Kuse has presented no evidence -- other than the allegations contained in the Trustee's complaint against the Bank-- that the Bank's issuance of the cashier's checks in question were other than routine commercial transactions. We therefore see no basis for viewing the Bank as other than a conduit for the funds transferred to Kuse, and agree with the bankruptcy court's and district court's conclusion that Kuse was the initial transferee of the unauthorized $595,000 transfer. Accordingly, we affirm the grant of summary judgment for the Trustee.

IV.

Although Kuse is deemed to be the initial transferee of the $595,000 payment, the Bankruptcy Code's prohibition against double recovery means that Kuse is entitled to offset its liability for the transfer by any amount that the Trustee has already received for it from another source. See 11 U.S.C. § 550(d). The second issue before this court, therefore, is whether the $595,000 Kuse transfer was included in the $1.5 million settlement agreement between the Trustee and the Bank. If it was, then Kuse is entitled to a set-off. We find that the transfer at issue was not included in the settlement agreement between the Trustee and the Bank, and Kuse is not therefore entitled to any set-off.

9

As noted above, in his attempt to recover the property of the estate, the Trustee claimed, in separate litigation, both that Kuse was the initial transferee of the $595,000 payment (in its suit against Kuse), and that the Bank was the initial transferee of the same payment (in two counts of its suit against the Bank). The bankruptcy court ruled that Kuse was the initial transferee two years prior to the settlement agreement between the Trustee and the Bank; however, this ruling remains on appeal to this day and the Trustee never formally amended his complaint against the Bank to remove his claim for the $595,000 transfer.

Nonetheless, the bankruptcy court found that there had been no merit in the Trustee's claim against the Bank under §§ 549 and 550 for the $595,000 Kuse transfer at the time of the settlement. Bankr. Ct. Order, Oct. 7, 1996, at 3, in J.A. 914. Furthermore, in the alternative, the court noted that the Trustee and the Bank based their settlement negotiations on "a theory for potential recovery from [the Bank] based on transfers about which [the Bank] might have had actual knowledge of impropriety," and that "[d]uring the parties' settlement negotiations, the parties did not consider the Kuse Transfer as a transfer for which [the Bank] might be liable under that theory." Id. Based on this, the bankruptcy court made a finding of fact that "[t]he settlement amount agreed [to] by the parties did not include recovery for the funds transferred to Kuse." Id. The bankruptcy court therefore concluded that the Trustee would not receive a double recovery for the $595,000 Kuse transfer and Kuse was not entitled to a set-off based on the Trustee's settlement with the Bank. Id.

The district court disagreed with this analysis, holding that the bankruptcy court had committed clear error in finding that the settlement agreement did not include the Kuse transfer because the agreement expressly stated that it settled "any and all . . . claims, actions or causes of action" asserted by the Trustee against the Bank. The district court noted that at the time the settlement was reached, Kuse was appealing the bankruptcy court's finding that it was the initial transferee of the $595,000 payment and, because the Trustee had not amended his complaint to remove his claim against the Bank for the identical transfer, the Bank still faced the risk that it could be held liable for the $595,000 Kuse transfer. The district court therefore concluded that, "[d]espite what the Trustee and[the Bank] may have

10

contemplated," the language of the settlement agreement encompassed the Kuse transfer and Kuse was therefore entitled to a full set-off from the settlement proceeds. District Ct. Order of Sept. 30, 1997, at 7-8, in J.A. at 1007-08.

We agree with the district court that whether or not the parties to the settlement intended to include the Kuse transfer in their settlement agreement is not dispositive. In a closely analogous case involving a trustee's attempt to recover a preferential transfer claim under § 550 of the Bankruptcy Code, the Ninth Circuit warned of the "collusive forces at play in these situations." Sims v. De Armond (In re Lendvest Mortgage, Inc.), 42 F.3d 1181, 1182 (9th Cir. 1994). In Lendvest Mortgage, the debtor had transferred $50,000 to an entity called Fund II on behalf of the De Armonds. This $50,000 was deemed to be a preferential transfer, and the trustee in bankruptcy sought recovery of it from the De Armonds, for whose benefit the transfer had been made. The trustee also brought an adversary proceeding against Fund II, on grounds unrelated to the $50,000 preferential transfer. The trustee and Fund II settled, and as part of the settlement the trustee agreed to withdraw his claim (filed as part of Fund II's bankruptcy proceedings) relating to the $50,000 transfer. The trustee then went after the De Armonds for the transfer. See Sims v. De Armond (In re Lendvest Mortgage, Inc.), 123 B.R. 623, 624 (Bankr. N.D. Cal. 1991).

Pursuant to § 550(a)(1), the trustee was entitled to recover the preferential transfer claim from either Fund II, as the initial transferee, or the De Armonds, as the persons for whose benefit the transfer was made. Section 550(c) [now § 550(d)], however, limited the trustee to a single satisfaction of the amount in question. The trustee argued that its settlement with Fund II did not include any recovery on the $50,000 transfer, because that claim had simply been dropped. The Ninth Circuit approved of the bankruptcy court's refusal to accept the allocation urged by the trustee, observing:

> The settling defendant only cares about the total amount of the settlement, but the plaintiff [trustee] greatly prefers that the settlement be allocated to non-joint liabilities so as to allow the plaintiff to recover more from other defendants. Because of the lack of truly adverse interests, . . . the par-

11

> ties' allocation is virtually meaningless and may not reasonably reflect the parties' relative liabilities.

Lendvest Mortgage, 42 F.3d at 1184. The Ninth Circuit, however, rejected the bankruptcy court's proposed antidote to the collusive forces at play in such a situation, which would have required a trustee to give prior notice of the settlement to the affected non-settling parties and get judicial approval of the allocation of the settlement in order to prevent a non-settling party from using the settlement to offset for its own liability. Id. at 1183. Rather, the Ninth Circuit held, "the bankruptcy court must undertake an independent allocation of the settlement before it may conclude that the . . .[avoidable] transfer claim has been completely or partially satisfied." Id. at 1185.

Here, as in Lendvest Mortgage, the interests of the Trustee and the Bank were not truly adverse when they drafted their settlement agreement: the Bank cared only about the total amount of the settlement, while the Trustee would of course have preferred that the settlement be structured so as to allow him to recover from other defendants, such as Kuse. We therefore agree with the district court that, although the parties to the settlement apparently did not consider the $595,000 Kuse transfer to be a part of their settlement, given the collusive potential of such an agreement and the subsequent risk of prejudice to the interests of non-settling parties, the court is not compelled to accept the Trustee's assertion that its settlement with the Bank did not include the Kuse transfer, but must undertake an independent allocation of the settlement.

The bankruptcy court did precisely that. Based on its knowledge of the settlement negotiations and terms of the settlement agreement between the Trustee and the Bank, it concluded as a matter of fact that the Kuse transfer claim was not part of the settlement. We cannot say that this finding is clearly erroneous. The amount of the settlement, its terms, as well as the negotiations between the parties to the settlement all indicate that no portion of the settlement was allocated to the Kuse transfer. The Trustee simply received no recovery on the Kuse transfer as a result of his settlement with the Bank.

Furthermore, we agree with the bankruptcy court that the Trustee's claim against the Bank, which was based on its contention that the

12

Bank was the "initial transferee" for the Kuse transfer, was never strong to begin with. Every court that has considered this claim has rejected Kuse's argument that the Bank be held liable as the initial transferee, and while the Trustee obviously attempted to make the same argument in his complaint against the Bank, there was little merit to it. At best there was never more than an attenuated risk that the Bank might be liable for the Kuse transfer. Without any real risk of liability on the Bank's part, the bankruptcy court did not clearly err in finding the settlement did not cover this claim. Consequently, we reverse the district court and reinstate the bankruptcy court's order that Kuse not receive any credit or set-off against the court's judgment based on the Trustee's subsequent settlement with the Bank.

V.

We find that Kuse Enterprises, as the first party to have legal dominion and control over the unauthorized post-petition transfers from the debtor's accounts, was the initial transferee under 11 U.S.C. § 550(a), and affirm the district court's grant of summary judgment for the Trustee. Because the settlement agreement and receipt of funds by the Trustee from the Bank does not constitute a double recovery for the Trustee on the avoided transfer in question, Kuse Enterprises is not entitled to any set-off against the settlement proceeds. Accordingly, we reverse the district court's order granting a set-off and direct the district court to reinstate the bankruptcy court's order denying a set-off.

AFFIRMED IN PART AND REVERSED IN PART

13